OF

# PENNSYLVANIA.

---

## ALLEGHENY COUNTY.

OCTOBER AND NOVEMBER TERM, 1884, No. 23.    OCTOBER 28, 1884.

Penny.
4p    1
201   611
4 P      25
205      463

## Baum's Appeal.

A testatrix died, leaving her surviving ten grandchildren. She directed the payment of debts and certain legacies as soon as convenient after her decease, and that the sum of $10,000 should be expended by her executors in improving her lot in the cemetery. Her residuary real estate she devised "in same manner that it would descend and be distributed under the intestate laws of the Commonwealth now in force," and further provided as follows: "For the purpose of enabling my executors hereinafter named to carry out the provisions of my will and make distribution of the residue of my estate, I hereby authorize and empower them, so soon as they deem it practicable, to convert my said residuary estate into money, and to this purpose I hereby give them full power to divide into lots my real estate, and in such manner as they may deem most advantageous, for the interests of all concerned and with full power to make sale of any or all of said real estate by lot or lots or as a tract as they may think proper; and to make, execute, and deliver to the purchasers thereof, a deed or deeds in fee simple or otherwise for the same, leaving it entirely discretionary with my said executors when to sell, the manner of selling, the price to be paid, and the nature of the security to be taken from the purchasers for the payment of the purchase-money.

"Should my grandchildren (naming them) at any time, by unanimous consent, elect to take the unsold land instead of the proceeds thereof, they may do so—when, upon written notice, the same shall be delivered up to them by said executors for partition.

"Should either of my said grandchildren desire a lot or piece of ground for their own use and occupation, the said executors may con-

[Baum's Appeal.]

vey,the same to him or her in fee—after selection made—at a fair valuation to be accounted for in the then next distribution."

Five years after decedent's death, a petition being filed by one of the grandchildren, alleging lack of effort on the part of the executors to convert the residuary estate into money, or to sell the real estate, or to cause the same to be divided, and praying for partition among the heirs and devisees, to which answers of the executor and eight of the grandchildren were made that the decedent's personal estate had been exhausted in payment of debts and legacies, and that portions of the latter remained unpaid, and the whole of the $10,000 for cemetery purposes had yet to be raised, stating their belief that a sale of the real estate at the time was impracticable, and would be injudicious, and that eight of the grandchildren were opposed to the same, it was

*Held*, that as the unanimous consent of all the grandchildren "to take the unsold land instead of the proceeds thereof," had not been obtained, and as no fact had been adduced which would justify an interference with the large discretionary power given to the executors, as to the time of selling the real estate, the petition was properly dismissed.

Before Mercur, C. J. ; Gordon, Paxson, Trunkey, Sterrett, Green, and Clark, JJ.

Appeal of Henry S. Baum from the decree of the Orphans' Court of *Allegheny County*, dismissing his petition for the partition of the real estate of Catharine Roup, deceased.

The petition, filed October 21, 1882, as afterwards amended by leave of Court, set forth the decease, on October 21, 1877, of Mrs. Kitty Roup, leaving ten grandchildren, among them the petitioner; all, at the date of filing of the petition, being of full age, and all the children of the decedent's only child, Rebecca, who had married Wm. P. Baum; that the death of decedent's husband, her daughter and her daughter's husband, all intestate, preceded that of Mrs. Roup; that said decedent died seized of about one hundred acres of land in the Twentieth ward of the city of Pittsburgh ; that by her last will and testament, dated May 19, 1876, duly proved October 31, 1877, and registered, she provided, *inter alia*, as follows:

"*First*. I direct that all my just debts shall be paid by my executors as soon as convenient after my decease, and that the sum of ten thousand dollars ($10,000) at least shall be expended by said executors in putting our cemetery lot in order, in such a manner as said executors in their judgment may deem necessary.     *     *

"*Fourth*. All the residue of my estate, real and personal and mixed, I dispose of in same manner that it would descend and be distributed under the intestate laws of the Commonwealth now in force, and for the purpose of en-

abling my executors, hereinafter named, to carry out the provisions of my will, and make distribution of the residue of my estate, I hereby authorize and empower them, so soon as they deem it practicable, to convert my said residuary estate into money, and to this purpose I hereby give them full power to divide into lots my real estate, and in such manner as they may deem most advantageous for the interests of all concerned, and with full power to make sale of any or all of said real estate, by lot or lots, or as a tract as they may think proper, and to make, execute, and deliver to the purchasers thereof a deed or deeds in fee simple or otherwise for the same, leaving it entirely discretionary with my said executors when to sell, the manner of selling, the price to be paid and the nature of the security to be taken from the purchasers for the purchase-money.

"Should my grandchildren, viz: John R., Charles V., Frederick K., Henry S., Jonas H., Kate, Richard B., James S., William W., and George W., children of William P. Baum, and my daughter, Rebecca, both deceased— all of whom are now surviving, and of the full age of twenty-one years, excepting George W., at any time by unanimous consent elect to take the unsold land instead of the proceeds thereof, they may do so—when, upon written notice, the same shall be delivered up to them by said executors for partition.

"Should either of my said grandchildren desire a lot or piece of ground for their own use and occupation, the said executors may convey the same to him or her in fee— after selection made—at a fair valuation to be accounted for in the then next distribution."

The will, in addition, provided for the payment of legacies to the amount of $3,500.

The executors named in the will, and who duly qualified as such, were two of the decedent's grandsons, John K. Baum and Jonas H. Baum.

The petition further averred that, although five years have elapsed since the death of decedent, no effort has been made by the executors to convert the residuary estate into money, to sell the said real estate or any part of the same, or to cause the same to be divided among the devisees, or to carry out any of the provisions of said will; that petitioner had often requested them to administer the estate as directed in the will; that the petitioner believes it for the best interest of the estate that partition be made as provided in said will, and prays for a citation

[Baum's Appeal.]

on the heirs and devisees and executors to show cause why said real estate should not be divided into purparts among the heirs and devisees.

Answers were filed by the executors and by eight of the nine grandchildren other than the petitioner, from which it appeared that all the personal estate in the hands of the executors had been applied to the payment of debts and part of the legacies bequeathed in the will, and that balances still remained unpaid on the latter, and the real estate was still liable for the payment of $10,000 for cemetery purposes as provided in the will. The answers of the executors further stated that they "believe that the lands should be sold by them as soon as can be reasonably done, and the money distributed to those entitled but they deem it impracticable to do so now, and as the will leaves it entirely discretionary with the executors when to sell, etc., said respondents beg leave humbly to present their judgment that it would be greatly against the interests of all concerned to sell the same as the market for real estate now stands, and that the unsold real estate should not be divided among said grandchildren until said debts, legacies, etc., are fully paid."

The answers of the eight grandchildren of Mrs. Roup set forth that, "having either read or heard read the above answer to petition filed by Henry S. Baum, we answer that we believe the said answer to be true in every particular, and that it would not be for the interest of the parties in interest to have the land divided (if then) until the debts, legacies, bequests, etc., are fully paid, and that we are satisfied that now is not the time to dispose of any of said lands by sale, as there is now no market therefor."

The answers of the executors further denied the right of the petitioner to have partition of the premises among the parties in interest for the following reasons:

"*First.* The said grandchildren have not at any time by unanimous consent elected to take the unsold land instead of the proceeds thereof, but, on the contrary, have refused to consider the same.

"*Second.* The $10,000 for cemetery-lot purposes have not, as yet, been realized or expended.

"*Third.* The legacies have not, as yet, been fully paid and satisfied.

"*Fourth.* The power of sale under the will, as respondents have been advised and as they believe, is an absolute positive, and explicit direction to sell and to convert into money, and does not rest in the discretion of the executors nor depend upon contingencies."

[Baum's Appeal.]

The Court, on hearing and argument, entered a decree dismissing the petition in the following opinion by HAWKINS, P. J.:

"There are two grounds upon which the prayer for partition in this case must be refused :

I.   It is admitted there is a balance of legacies unpaid, and that the improvement of the cemetery lot has not been made as directed by the will.   The averment of the petitioner that the executors have sufficient available assets with which to satisfy these amounts having been denied by the answer and being not established by evidence, it must be presumed that further sales of real estate are necessary for that purpose.   If so, there can be no doubt that it is the office of the executors to make such sales.   This is conceded.   If further sales are necessary for the purpose of the will, the residuary estate has not yet been ascertained, and there can be no partition. This is also conceded ; but it is claimed that this Court has jurisdiction in this proceeding to ascertain the residuary estate by ordering the executors to make sale of sufficient real estate to satisfy the purpose of the will. The answer to this position is twofold.

*First.*   The petitioner prays for partition alone.   It is a well-settled principle that the sole purpose of partition is the severance of possession, as between parties having a community of interest in the land sought to be parted. In accordance with this principle, the Courts refuse to entertain questions of boundary and title : McMasters *v.* Carothers, 1 Pa. St., 324 ; Ihmsen *v.* Ormsby, 32 Id., 202 ; Robb *v.* Longstreth, Dist. Ct., Phila., (cited in Miller on Partition, 48.)   In the latter case, the court refused partition of land devised, because a definite boundary had not been fixed or agreed upon.   In McMasters *v.* Carothers, it is said that " the Court will not undertake to investigate the validity of the title when it is contested, for the possession alone gives jurisdiction."

The executors have no community of interest with petitioner.   They have the exclusive right of possession of so much land as the purposes of the will require them to sell.   An order on them to sell would, on the theory of petitioner, look to the ascertainment of the residue as being the subject of partition ; and until that order should have been executed, there could obviously be no such possession, as would support partition.   If the sole purpose of partition be severance of possession, the institution of proceedings in partition pre-supposes the ascertainment of the quantity and boundaries of the land sought to be

parted ; and the fact that that had not been done prevents jurisdiction of this Court attaching.

*Second.* But assuming that this court has jurisdiction in a proper case in such proceeding to ascertain the subject of partition, it will not, with this view, control the exercise of a discretionary power of sale given to trustees, unless the interests of the trusts required it : Dundas' Appeal, 64 Pa. St., 325. The record does not justify interference in this case. It does not appear that the trust has been abused, or that any loss has, or will presently, result from failure to sell. The executors are invested with the largest discretion ; and this Court must presume that they have acted in good faith and sound judgment until the contrary has been shown by clear and positive proof.

II. Had testatrix stopped with the first clause of the fourth paragraph of her will, there would not have been sufficient reason to doubt that no more than discretionary power of sale of the residuary estate was intended to be vested in the executors ; and that under the authority of Chew *v.* Nicklin, 45 Pa. St., 84, the petitioner would have been entitled to partition of that estate before actual conversion. The word "descend" is, *prima facie*, applicable to real estate, and the expression "authorize and empower" ordinarily imports no more than a discretion. But the concluding clauses of the paragraph show beyond a reasonable doubt that testatrix attached to them a different meaning ; and in accordance with the cardinal rule of construction in such cases, the ordinary meaning must yield to the manifest intention of testatrix. The intention to convert out and out is evidenced—

*First.* By the provision making the unanimous consent of the grandchildren a condition precedent to their election, " to take the unsold land instead of the proceeds thereof," in connection with the previous authority to the executors " to convert my (testatrix's) residuary estate into money; " and

*Second.* By the intention to vest in the executors, control of the residuary estate as manifested in the extent of the powers of sale granted, in the direction that upon written notice to the executors of the unanimous election of the grandchildren "to take the unsold land instead of the proceeds thereof," the said land "shall be delivered up to them by said executors for partition ;" and in the direction that "should either of my said grandchildren desire a lot or piece of land for their own use and occupation, the said executors may convey the same to him or

[Baum's Appeal.]

her—after selection made—at a fair valuation, to be accounted for in the then next distribution."

The necessary implication from these provisions, which express the final and controlling thought of testatrix, is the exclusion of the grandchildren from and the investiture of the executors with the right of possession of testatrix's residuary estate until conversion by the executors, or the election by the grandchildren "to take the unsold land instead of the proceeds thereof."

The extraordinary powers of sale vested in the executors, the direction that upon election the unsold land should be "delivered up" to the grandchildren by the executors "for partition," and that the executors should convey lots for "use and occupation" to such of the grandchildren as should desire them, can be explained or accounted for on no other theory of construction. Why or how "deliver up" possession for partition, or make conveyance for "use and occupation," and charge a "fair valuation," unless the intention had been to confer on the executors a prior right of possession?

These considerations leave no room for doubt that the intention of testatrix was to give her executors complete control of her real estate. The petition for partition must, therefore, be dismissed with costs."

From this decree, the petitioner took this appeal, assigning for error, *inter alia*, the action of the Court in dismissing his petition.

*Carnahan & Son* and *W. S. Miller* for appellant.

There is nothing in the first clause of the fourth paragraph of the will showing an intention on the part of testatrix to convert her real estate into money. Her land is referred to as real estate and it is to descend as it would to her grandchildren, under the intestate laws, if no will had been made, and the expression, "authorize and empower," as has been determined in numerous cases, imports no more than a discretion: Anewalt's Appeal, 6 Wr., 416; Blight v. Bank, 10 Barr, 131; Nagle's Appeal, 1 Harris, 260; Stoner v. Zimmerman, 9 Harris, 394; Henry v. McCloskey, 9 Watts, 145; Boshart v. Evans, 5 Wh., 551; Hoke v. Leman, 8 S. & R., 248; Chew v. Nicklin, 9 Wr., 84; Swift's Appeal, 6 Nor., 502; Edwards' Appeal, 11 Wr., 144; Jones v. Caldwell, 1 Out., 42; Roland v. Miller, 11 W. N., 431; Lindley's Appeal, 13 *Id.*, 65; and Appeal of Lehman, Hunt, and others, 14 W. N., 381.

*Bruce, Negley & Shields* for appellees.

'It is clear that the testatrix intended, and did she not, by a strict construction of the will, place the legal title in the executors? She directed that "should my grand-children . . . at any time, by unanimous consent, elect to take the unsold land instead of the proceeds thereof, they may do so."

Now, if already possessed thereof by the terms of the will, why require a unanimous consent to elect to take what they already had? or why require a written notice to the executors—upon unanimous consent—for them to deliver up the land for partition what they, the grand-children, already held, and if the legal title was, and is, in the executors, the line of descent is broken and the grandchildren are not vested with at least one of the necessary elements to claim partition, viz: "unity of possession," and in further confirmation of this position, a strict construction of the will makes it clear that if the executors desired to surrender the estate to the beneficiaries against their unanimous consent, the beneficiaries could not be compelled to accept the land in lieu of the proceeds: Willing *v.* Peters, 7 Pa. St., R., 287. The beneficiaries are entitled to the proceeds by the terms of the will as a matter of right. Without a voluntary election by all parties interested, no partition can be had.—*Id.* The testatrix, foreseeing that all might not agree unanimously to elect to take the whole, provided that if one or more of the beneficiaries might desire a lot or piece of ground instead of money, (and that they might not be deprived of this privilege,) she directed that "should either of my said grandchildren desire a lot or piece of ground for their own use and occupation, the said executors may convey the same to him or her in fee, after selection made, at a fair valuation to be accounted for at the then next distribution." Here again we have the recognition by the testatrix, in unmistakable language, that they should not have title to any of the land except for certain purposes and in the mode and manner appointed therefor, but that the title should remain in the executors for sale until, at least, such grandchild should make a selection of a lot or piece of ground for his own use and occupation, when the executors might, instead of selling and conveying to a general purchaser, convey such selected lot to the selector in fee at a fair valuation to be accounted for in the then next distribution, which distribution has, and can by a strict construction of the will have, reference only to the proceeds of lands sold or to be sold.

NOVEMBER 10th, 1884.—PER CURIAM: No fact is shown to justify the Court in interfering with the large discretionary power given to the executors as to the time of selling the real estate, and the unanimous consent of all the grandchildren to take "the unsold land instead of the proceeds thereof" had not been obtained.

The petition was, therefore, properly dismissed.

Decree affirmed and appeal dismissed at the costs of the appellant.